PER CURIAM OPINION
{¶ 1} This action in mandamus is presently before this court for consideration of the motion to dismiss of respondent, Linda Fankhauser, the Clerk of Courts for Portage County, Ohio. As the primary basis for her motion, respondent asserts that the petition of relator, Peter M. Williams, fails to state a viable claim for the writ because his factual allegations support the conclusion that she does not have a legal duty to accept for filing a surety bond which he is attempting to submit to her. For the following reasons, we hold that the motion to dismiss has merit.
 {¶ 2} The ensuing statement of facts is a synopsis of the allegations contained in relator's mandamus petition. On December 29, 2005, relator was placed under arrest by certain Portage County authorities and charged with three counts of receiving stolen property, fourth-degree felonies under R.C. 2913.51(C). The following day, relator was brought before Judge John A. Enlow of the Portage County Court of Common Pleas for arraignment. Upon accepting relator's initial plea of not guilty, Judge Enlow appointed counsel to represent him in the criminal action.
 {¶ 3} As part of the arraignment hearing, Judge Enlow also set the amount of relator's bail for purposes of his pretrial release. In his judgment entry of December 30, 2006, Judge Enlow expressly stated that relator's "bond" had been set at "$25,000.00 Ten Percent."
 {¶ 4} Over the next two weeks, relator's family attempted to collect the sum of $2,500 for the purpose of posting his bail. When they were unable to do so, the family contacted David Mayfield, a licensed bail bondsman who operated a company known as BDM Bail Bonds. Eventually, Mayfield agreed to submit a surety bond for relator for the full amount of $25,000. In return, the family was obligated to pay him the sum of $2,500, but could make periodic payments on the debt instead of having to pay the entire sum at once.
 {¶ 5} On January 17, 2006, Mayfield went to respondent's office for the purpose of posting the surety bond. However, respondent's deputies would not accept the bond, stating that relator could only obtain his release by submitting cash in the amount of $2,500. As a result, relator is still in the custody of the Portage County Sheriff awaiting his trial in the underlying criminal case.
 {¶ 6} In light of respondent's actions regarding the surety bond, relator instituted the instant action before this court, seeking a writ of mandamus to compel her to allow the bond to be file so that he can be released. As the legal basis for his claim, relator asserted in his petition that, pursuant to Judge Enlow's judgment entry and Crim.R. 46, he had the option of either posting a surety bond for the full sum of $25,000 or posting cash in the amount of $2,500. He further stated that, by not accepting Mayfield's surety bond, respondent was forcing him to use a "cash only" bond to obtain his release from the Portage County Jail. Finally, relator contended that the requirement of "cash only" violated his right under the Ohio Constitution to obtain bail by sufficient sureties.
 {¶ 7} In now moving to dismiss the entire mandamus claim, respondent argues that Judge Enlow's "bail" order was legally correct because it was made in accordance with Crim.R. 46(A)(2). Respondent also asserts that, under the specific language of that order, only the posting of $2,500 in cash would be sufficient to warrant relator's release pending his trial. Based on this, she maintains that she had no duty to accept the surety bond because she had to follow the specific order contained in Judge Enlow's judgment regarding relator's bail.
 {¶ 8} As both parties aptly note in their present submissions, the basic right of a criminal defendant to be released pending his trial is protected under Section 9, ArticleI of the Ohio Constitution. At the present time, Section 9 provides, in pertinent part:
 {¶ 9} "All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, and except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."
 {¶ 10} Even though Section 9 of Article I was amended in January 1998, the prior versions of this provision also contained the "bailable by sufficient sureties" phrase. In interpreting that phrase, the courts of this state have consistently held that it grants the defendant an absolute right to nonexcessive bail unless one of the two exceptions in the provision is applicable to him. See Gallagher v. State (1998), 129 Ohio App.3d 775. In addition, it has been held that the phrase guarantees that a defendant can use a surety to post bail in his behalf. State exrel. Baker v. Troutman (1990), 50 Ohio St.3d 270.
 {¶ 11} Since the "bail" requirements of Section 9, Article I are stated in somewhat general terms, the Supreme Court of Ohio has enacted procedural rules to assist trial courts in implementing those basic requirements. Specifically, Crim.R. 46 sets forth the various factors and conditions a trial court should consider in determining bail. In regard to the types of bail which can be used, subsection (A) of the rule states:
 {¶ 12} "(A) * * * Any person who is entitled to release shall be released upon one or more of the following types of bail in the amount set by the court:
 {¶ 13} "(1) The personal recognizance of the accused or an unsecured bail bond;
 {¶ 14} "(2) A bail bond secured by the deposit of ten percent of the amount of the bond in cash. Ninety percent of the deposit shall be returned upon compliance with all conditions of the bond;
 {¶ 15} "(3) A surety bond, a bond secured by real estate or securities as allowed by law, or the deposit of cash, at the option of the defendant."
 {¶ 16} As the wording of Crim.R 46(A) readily indicates, each of the three types of bail listed in the rule can be used separately as a valid means of setting a defendant's bail. In addition, the courts of this state have recognized a fourth type of bail, which is a combination of the two types in Crim.R. 46(A)(2) and (A)(3). Under this fourth type, the defendant has the option of posting his bail by satisfying any of the methods listed in the two provisions. See Smith v. Leis, 1st Dist. No. C-050957, 2006-Ohio-450, at ¶ 22.
 {¶ 17} In applying both the present and prior versions of Crim.R. 46(A)(3), some trial courts have attempted to limit a defendant's "posting" options by stating that he had to post "cash" for the entire amount of the bond. For example, in Stateex rel. Jones v. Hendon (1993), 66 Ohio St.3d 115, the municipal court set an accused murderer's bond at $50,000 "cash only." At the time of the Jones case, the type of bail set forth presently in Crim.R. 46(A)(3) was set forth under a different section of the rule; however, although the wording of the prior version was slightly different than the current one, it still gave a defendant three options for satisfying the "bond" requirement, including the deposit of cash. After the clerk for the municipal court in Jones refused to accept a surety bond in lieu of the cash, the accused's bondsman filed a mandamus action to require the judge and the clerk to allow the surety bond. Initially, the court of appeals denied the writ on the basis that the prior version of Crim.R. 46(A)(3), i.e., Crim.R. 46(C)(4), gave the trial judge the discretion to order a "cash only" bond under some circumstances. On appeal, though, the Supreme Court reversed, concluding that the appellate court's interpretation of the rule had been erroneous and had resulted in a violation of Section 9, Article I:
 {¶ 18} "However, Crim.R. 46(C)(4) constitutes but a single condition which the judge may impose — the condition of a bond. Once a judge chooses that condition and sets the amount of bond, we find no legitimate purpose in further specifying the form of bond which may be posted. Indeed, the only apparent purpose in requiring a `cash only' bond to the exclusion of the other forms provided in Crim.R. 46(C)(4) is to restrict the accused's access to a surety and, thus, to detain the accused in violation of Section 9, Article I. * * *
 {¶ 19} "Accordingly, we find that where a judge imposes a bond as a condition of release under Crim.R. 46(C)(4), the judge's discretion is limited to setting the amount of the bond. Once that amount is set, and the accused exercises his constitutional right to enlist a surety to post bail on his behalf, that being one of the options set forth in Crim.R. 46(C)(4), the clerk of courts must accept a surety bond to secure the defendant's release, provided the sureties thereon are otherwise sufficient and solvent." Jones, 66 Ohio St.3d at 118.
 {¶ 20} Five years after the decision in Jones, Crim.R. 46 and Section 9, Article I of the Ohio Constitution were amended to their present form. As a result, a new dispute arose concerning whether the amendments to the rule and the constitutional provision had had the effect of essentially overruling Jones as to the permissibility of a cash only bond. This dispute was settled in Smith v. Leis, 106 Ohio St.3d 309, 2005-Ohio-5125.
 {¶ 21} Like Jones, Smith involved the bail of an accused murderer. At the end of his first trial, the Smith defendant was found guilty of, inter alia, murder and attempted murder. On appeal to the First Appellate District, the conviction was reversed and the case was remanded for a new trial. A "bond" hearing was then held before the common pleas judge to determine if the defendant should be released pending the second trial. After concluding that bail had to be granted because the death penalty could no longer be imposed, the trial judge set the bond at "$1,000,000 straight, cash only."
 {¶ 22} When the trial judge would not reconsider the matter, the Smith defendant filed a habeas corpus action in the First Appellate District. In appealing the decision of that court to dismiss the petition, the Smith defendant argued before the Supreme Court that, despite the modification of the wording of Section 9, Article I and Crim.R. 46, both provisions did not allow for a "cash only" bond. The Supreme Court agreed, expressly upholding its prior decision in Jones. In the first segment of its analysis, the Smith court concluded that the phrase "bailable by sufficient sureties" retained the same meaning in the amended version of Section 9, Article I as it had in the prior versions; i.e., pursuant to the phrase, an accused could not be denied the use of sureties in satisfying a bond order. In the second segment, the Smith court held that, even if the Section 9, Article I had been changed to permit a "cash only" bond, such bond still could not be ordered by trial courts because the new Crim.R. 46 did not provide for them. As to this latter point, the Supreme Court stated: "* * * if we had intended to authorize cash-only bail when we amended Crim.R. 46, we would have so provided with appropriate language." Smith,
106 Ohio St.3d at ¶ 71.
 {¶ 23} In the instant case, relator has asserted in his petition that the outcome of the present matter is dictated by the holding in Smith and Jones; i.e., relator maintains that, by not accepting the surety bond from his bail bondsman, respondent is requiring him to post a "cash only" bond which is not permissible under either Section 9, Article I or Crim.R. 46. As to this argument, this court would emphasize that each of the bonds in Smith and Jones was set pursuant to Crim.R. 46(A)(3) and its prior versions. As was noted above, this type of bail delineates three different means which a defendant can use to satisfy the bond requirement: a surety bond, a bond security by property or securities, or cash. In contrast, the bond in the underlying case involving relator was set pursuant to Crim.R. 46(A)(2). Under this form of bail, a defendant is only given one option; i.e., he must deposit ten percent of the amount of the bond in cash.
 {¶ 24} As the analysis in Smith and Jones readily indicate, if a defendant decides under Crim.R. 46(A)(3) to invoke the "cash" option, it will be necessary for him to submit cash covering the entire amount of the bond. However, even though Crim.R. 46(A)(2) does not provide the defendant with any options, it requires him to deposit with the clerk only ten percent of the entire bond in cash. That is, under Crim.R. 46(A)(2), he is given the benefit of not having to cover ninety percent of the full amount set by the trial court. To this extent, this court holds that the bond requirement of Crim.R. 46(A)(2) cannot be characterized as a "cash only" bond in the same respect as the bonds in the Smith and Jones cases.
 {¶ 25} Furthermore, we would restate that, although the bail order in Smith was made solely pursuant to Crim.R. 46(A)(3), the Supreme Court's pronouncement was set forth in very broad terms. Specifically, the Supreme Court stated that the new version of the entire Crim.R. 46 was not intended to permit the use of a "cash only" bond. Despite the fact that the general legality of Crim.R. 46(A)(2) was not technically before theSmith court at the time, this court cannot envision that the Supreme Court would state such a broad holding if there was any doubt as to the constitutionality of the "ten percent cash" requirement. Therefore, we ultimately conclude that the provisions of Crim.R. 46(A)(2) do not violate the "bailable by sufficient sureties" requirement of Section 9, Article I of the Ohio Constitution.
 {¶ 26} In bringing the instant case, relator attached to his petition a copy of Judge Enlow's judgment entry of December 30, 2005. Our review of that judgment indicates that Judge Enlow fully met the requirements of Crim.R. 46(A)(2) in setting relator's bond in the underlying criminal case. As a result, respondent was not obligated to accept the surety bond which the bail bondsman tried to submit in behalf of relator; instead, her duty was simply to accept a deposit of cash pursuant to Judge Enlow's judgment entry. Under these circumstances, relator's sole remedy would be to move for an amendment of the "bond" order to allow for the submission of the surety bond. If such a motion was not granted, relator could then bring a habeas corpus action on the possible basis that the bond requirement allegedly was excessive.
 {¶ 27} As a general proposition, a writ of mandamus will be issued only when the relator can demonstrate, inter alia, that the respondent has a clear legal duty to perform the requested action. See State ex rel. Smith v. Enlow (July 20, 2001), 11th Dist. No. 2000-P-0131, 2001 Ohio App. LEXIS 3282. Pursuant to the foregoing discussion, this court concludes that, even when relator's allegations in the instant case are construed in a manner most favorable to him, they are still legally insufficient to show that he would be able to prove a set of facts under which respondent would be obligated to accept the surety bond. Thus, the dismissal of the mandamus claim is warranted under Civ.R. 12(B)(6). See State ex rel. Brown v. Logan, 11th Dist. No. 2004-T-0088, 2004-Ohio-6951, at ¶ 11.
 {¶ 28} Respondent's motion to dismiss the mandamus petition is granted. It is the order of this court that relator's entire mandamus petition is hereby dismissed.
Ford, P.J., Rice, J., O'Toole, J., concur.